UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AAKASH DALAL,<br><br>  Plaintiff,<br><br>  v.<br><br>JOSEPH E. KRAKORA, et al.,<br><br><br><br>  Defendants. | Civil Action No. 21-3439 (MCA)<br><br><br><br>MEMORANDUM OPINION |

This matter has been opened to the Court on a motion to dismiss Plaintiff Aakash Dalal's Complaint filed by Deputy Attorney General Phoenix Nicole Meyers on behalf of Public Defender Joseph Krakora, Deputy Public Defender Jean Hartmann, and retired Deputy Public Defender Matthew Astore ("Defendants"). *See* ECF No. 4. For the reasons explained below, the motion to dismiss is granted as to the damages claims against Defendants in their official capacities only and is otherwise denied without prejudice.

**I.       FACTUAL BACKGROUND & PROCEDURAL HISTORY**

Plaintiff is a prisoner currently incarcerated at South Woods State Prison. He has sued Defendants along with unidentified Office of the Public Defender ("OPD") employees, John Does 1-10 ("State Defendants"), asserting violations of his civil rights pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"). Specifically, Plaintiff alleges that Defendants knew he was indigent but refused to withdraw from Plaintiff's criminal appeal and allow a private attorney to represent him unless Plaintiff and/or his family agreed to pay $20,000 for his prior representation by the OPD.

Plaintiff alleges that he has been incarcerated since March 12, 2012, on pending criminal charges, Plaintiff's Complaint ¶ 8, and was eventually convicted of unspecified charges and was sentenced to 35-years in state prison. *Id.* at ¶ 10. Plaintiff alleges that prior to his incarceration, he was a college student and was not employed while incarcerated. *Id.* ¶ 21.

Plaintiff initially sent a letter, via facsimile, to Public Defender Joseph Krakora requesting representation from the OPD for his direct appeal on August 7, 2017. *Id.* at ¶ 11. The next day, Secretarial Assistant Christina I. Bytz sent a letter to the Bergen County Superior Court Criminal Division to determine whether Plaintiff was indigent. *Id.* at ¶ 12. Subsequently, the OPD determined Plaintiff was indigent, and OPD attorney Frank Pugliese, Esq. entered a "temporary" appearance on the Plaintiff's behalf and filed a notice of appeal. *Id.* at ¶¶ 13-14.

Plaintiff alleges that between September 1, 2017, and April 1, 2018, he repeatedly called the Appellate Section of the OPD to determine whether an attorney had been assigned to his case and was advised that no attorney had been assigned. *Id.* at ¶ 16. During this same timeframe, Plaintiff alleges that Defendants Krakora, Astore, and Hartmann determined that OPD would not assign Plaintiff an attorney. *Id.* at ¶ 17.

Subsequently, in July 2018, a family member retained an attorney on Plaintiff's behalf, but Defendants advised the attorney that OPD would not withdraw from Plaintiff's case unless Plaintiff repaid OPD for $20,000 in costs. Complaint at ¶¶ 18-19. On July 17, 2018, OPD again sent a letter to Bergen County Superior Court Criminal Division Manager to verify whether Plaintiff was indigent, and Plaintiff's indigency was confirmed. *Id.* at ¶¶ 20-21. Despite their knowledge that that Plaintiff was indigent, Defendants nevertheless continued to refuse to withdraw from the matter, which prevented Plaintiff's retained attorney from representing him on appeal. *Id.* ¶¶ 22.

Defendant Krakora subsequently negotiated an agreement with Plaintiff's family member to pay $7,500, and, upon receipt of the payment, Defendant Krakora then ordered Astore and Hartmann to withdraw from representing Plaintiff. *Id.* at ¶¶ 23-24.

Plaintiff alleges that similarly situated indigent criminal defendants are routinely assigned counsel by Defendants and/or OPD without additional expense, and that Defendants' alleged misconduct denied him the counsel of his choice, substantially delayed his appeal, and caused him to incur financial obligations in violation of his constitutional rights. *Id*. at ¶¶ 25-26. Plaintiff specifically asserts violations of his Sixth Amendment right to counsel and Fourteenth Amendment right to equal protection, as well as a civil rights conspiracy claim. Plaintiff brings his claims pursuant to § 1983 and the NJCRA and he seeks compensatory, punitive, and nominal damages and injunctive relief.[1]

This matter was initially filed in the Superior Court of New Jersey, Law Division, Essex County, and was removed to the District of New Jersey by Defendants. *See* ECF No. 1. Defendants filed the instant motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 4. Plaintiff opposes the motion to dismiss, ECF No. 6, and Defendants have submitted their reply. ECF No. 7. The motion to dismiss is fully briefed and ready for disposition.

**II.     STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R .Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no

---

[1] The Court does not construe the Complaint to raise any state law claims other than the NJCRA claims.

claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. CIV. 11–4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012).

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). As a pro se litigant, Plaintiff is entitled to liberal construction of his complaint. *See Liggon–Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011). To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.    ANALYSIS

In the motion to dismiss, Defendants make two arguments for dismissal of Plaintiff's Complaint. First, they argue that Plaintiff's claims are subject to dismissal because Defendants are not "persons" under § 1983. Second, they argue that Plaintiff's NJCRA claims are subject to dismissal because Defendants are entitled to absolute immunity. The Court addresses these arguments in turn.

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *see also*

*Woodyard v. Cnty. of Essex*, 514 F. App'x. 177, 180 (3d Cir. 2013) (noting that section 1983 provides "private citizens with a means to redress violations of federal law committed by state [actors]"). It is well-established that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). As such, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71. Nevertheless, a plaintiff may bring a § 1983 claim against a state actor in his or her personal capacity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* As the Supreme Court has explained:

> *Will* itself makes clear that the distinction between official-capacity suits and personal-capacity suits is more than a mere pleading device. State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person."

*Id.* at 27. "In determining whether [a plaintiff has sued an official] in her personal capacity, official capacity, or both, [courts] ... look to the complaints and the course of proceedings." *Melo*, 912 F.2d 628, 635 (3d Cir. 1990), aff'd, 502 U.S. 21 (1991) (internal citations and quotations omitted). In addition, although a state actor acting in his or her official capacity cannot be sued for money damages under § 1983, an exception to that general rule permits a plaintiff to seek injunctive relief against state actors in their official capacities. *See Will*, 491 U.S. at 92.

Here, Plaintiff has not sued the State of New Jersey or the OPD, and his Complaint does not specifically allege any official capacity claims for damages. Indeed, the Demand for Relief

asks for damages against Defendants in their individual capacities. *See* Complaint at 10. Because Plaintiff may not proceed against Defendants in their official capacities for damages, the Court will grant the motion to dismiss the § 1983 and NJCRA damages claims against Defendants <u>in their official capacities only</u>.² To be clear, the damages claims against Defendants in their personal capacities, as well as the official capacity claims for injunctive relief, are not subject to dismissal under *Will*.

The Court turns next to Defendants' arguments that they are entitled to absolute immunity as public defenders. As a general rule, "public defenders and court-appointed counsel acting within the scope of their professional duties are absolutely immune from civil liability" under 42 U.S.C. § 1983. *Walker v. Pennsylvania*, 580 F. App'x 75, 78 (3d Cir. 2014)(quoting *Black v. Bayer*, 672 F.2d 309, 320 (3d Cir. 1982) abrogated on other grounds by *D.R. v. Middle Bucks Area Voc. Tech. Sch.*, 972 F.2d 1364, 1368 n.7 (3d Cir. 1992)). This immunity extends to defense attorneys employed by a state government, such as public defenders, because defense counsel in a criminal proceeding "does not act under color of state law when performing a lawyer's traditional functions." *Polk Cty. v. Dodson*, 454 U.S. 312, 318 (1981). New Jersey courts have interpreted the NJCRA as incorporating all of the immunities, defenses, and limitations of § 1983. *See, e.g., Brown v. State*, 230 N.J. 84, 97-99 (2017).

Defendants contend that they were performing a lawyer's traditional functions and/or were within the scope of their professional duties when they refused to withdraw from Plaintiff's case until he paid them for prior costs. From the outset, the decisions cited by Defendants

---

² The NCJRA is "intended to provide New Jersey citizens with a state analogue to Section [ ] 1983 actions." *Surina v. S. River Bd. of Educ.*, No. 17-2173, 2018 WL 3617970, at *11 (D.N.J. July 30, 2018). For this reason, the Court's analysis regarding Section 1983 applies with equal force to Dalal's claims under the NJCRA

involve plaintiffs who sought to bring ineffective assistance claims against their defense attorneys. *See Walker*, 580 F. App'x. at 77 (explaining that plaintiff alleged that his defense counsel provided ineffective assistance); *Black*, 672 F.2d at 313 (explaining that plaintiff alleged incompetency of representation and conspiracy with the prosecutor to suppress evidence of plaintiff's innocence).

The plaintiff in *Polk Cty. v. Dodson* also asserted claims of ineffective assistance against his public defender in connection with her decision to withdraw from his case, and the Supreme Court held that a public defender did not act under color of state law when the public defender moved to withdraw as appellate counsel <u>on ground that claims were legally frivolous</u>. 454 U.S. at 324. Pursuant to this precedent, it appears that a criminal defense attorney would also be entitled to absolute immunity if he or she refused to withdraw to protect the client's legal interests, the integrity of the court, and/or the legal system, or was required to do so by the Rules of Professional Conduct.

Here, however, Plaintiff has alleged that Defendants refused to withdraw from representing him until Plaintiff paid OPD for legal costs even though they knew Plaintiff was indigent and did not routinely seek repayment from indigent Defendants. Furthermore, the Defendants' refusal to withdraw prevented Plaintiff's retained counsel from representing him in his appeal and delayed the appeal. It is questionable that this alleged conduct encompasses a lawyer's traditional functions or would be within the scope of his or her professional duties.

The motion to dismiss also largely ignores the central legal issue of whether the misconduct alleged falls within an exception to the general rule of absolute immunity. In *Polk Cty*, the Supreme Court rejected the argument that a public defender is a state actor merely because he or she is an employee of the state. *Id.* at 319–22. The Court specifically noted,

however, that "a public defender [acts] under color of state law while performing certain administrative and possibly investigative functions." *Polk*, 454 U.S. at 325. Defendants cite to no decisions in the Third Circuit or elsewhere affording absolute immunity to a defense attorney or public defender who refused to withdraw from a representation in order to obtain financial reimbursement.

Nor do Defendants sufficiently address and distinguish decisions applying the administrative and/or policy-based exceptions to absolute immunity. *See e.g., Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 612 (6th Cir. 2007) (finding that public defender's purported policy of failing to seek indigency hearings on behalf of its clients falls within the "administrative" exception alluded to in *Polk*); *Miranda v. Clark Cnty., Nev.*, 319 F.3d 465, 469 (9th Cir. 2003) (en banc) (county public defender fell within administrative action exception where he was "acting solely as the administrative head of the agency" and was "responsible for allocating the office's finite resources"). In their reply, Defendants contend that these decisions are unpersuasive because Plaintiff makes no allegations of any systemic failures of the OPD, but they do not provide authority for the proposition that systemic failures alone qualify for the administrative action exception. Defendants, not Plaintiff, "bear[] the burden of showing that no claim has been presented," *Hedges*, 404 F.3d at 750, and the Court is unconvinced that Defendants are entitled to absolute immunity at this stage of the proceedings.

Finally, the Court is also unconvinced by Defendants' arguments that their conduct is justified by statute and state court precedent.[3] Defendants note that under state law, a criminal

---

[3] The decisions cited by Defendants appear to support Plaintiff's right to have the OPD pay for the costs of representation so long as he is indigent. *See State v. Arenas*, 126 N.J. 504, 507= (1991) (holding that the Public Defender had to pay the costs of trial transcripts for an indigent defendant represented by private counsel); *In re Kauffman*, 126 N.J. 499, 503 (1991) (holding that the Public Defender is required to pay for an expert to challenge Avenel report); *In re*

defendant must be indigent in order to receive state-funded services. *In re Kauffman*, 126 N.J. 499, 502 (1991). Defendants emphasize that the OPD has "the right to review and determine whether defendant is indigent." *Id.* Pursuant to state procedures, when a criminal defendant who is represented by outside counsel applies for funds, the criminal defendant "should . . . include a copy of the written retainer agreement" with outside counsel. *Matter of Cannady*, 126 N.J. 486, 494 (N.J. 1991). The Public Defender Act also permits OPD to seek reimbursement for costs of services as follows:

> In all cases where it appears that the defendant has or reasonably expects to have means to meet some part, though not all, of the cost of the services rendered to him he shall be required to reimburse the office, either by a single payment or in installments, in such amounts as he can reasonably be expected to pay; but no default or failure in the making of any such payment shall in any wise affect or reduce the rendering of the services to him.

N.J.S.A. 2A:158A-16. This provision notes that a defendant's ability to pay would have no effect on the rendering of services. *See Calhoun v. Young*, No. 07-3691, 2007 WL 2462621, at *1 fn1 (D.N.J. Aug. 27, 2007) (explaining same).

Defendants then rely on facts that are outside the Complaint, including facts that contradict the allegations in the Complaint, to justify their decisions to seek reimbursement before withdrawing from the representation:

> State Defendants purchased transcripts from Plaintiff's trial to capably present Plaintiff's appeal. While State Defendants were preparing, Plaintiff obtained private counsel. Once State Defendants became aware Plaintiff obtained Mr. Zegas they requested that Mr. Zegas send the retainer agreement in order to determine appropriate reimbursement for the cost of Plaintiff's transcripts. Noteworthy is Mr. Zegas adamantly refused to provide the retainer agreement, delaying the process.

---

*Cannady*, 126 N.J. 486, 498 (1991)(holding that Public Defender is required to provide for the cost for an expert to support battered women's syndrome defense)

State's Brief at 2. Plaintiff alleges in the Complaint that OPM twice determined that Plaintiff was indigent and that Defendants nevertheless refused to assign an attorney for his appeal and then refused to withdraw from the representation until Plaintiff reimbursed OPM. Defendants' contrary version of the facts would be appropriate on a summary judgment motion, if properly supported by evidence, but is not properly considered here. On a Rule 12(b)(6) motion, the Court is confined to the allegations of the complaint, which are presumed to be true. The Court may also consider documents relied upon in, incorporated by reference in, or integral to, the complaint. *See In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Defendants additional factual allegations do not meet these requirements. As such, the Court declines to consider or credit Defendants' version of the facts.

For these reasons, the Court denies without prejudice the motion to dismiss the NJCRA and § 1983 claims against Defendants in their personal capacities on the basis of absolute immunity.[4]

## IV. CONCLUSION

For the reasons explained in this Memorandum Opinion, the motion to dismiss the § 1983 and NJCRA claims is granted as to the claims for damages against Defendants in their official capacities only. The motion to dismiss is otherwise denied without prejudice. An appropriate Order follows.

---

[4] In addition, Defendants attempt to raise qualified immunity for the first time in their reply brief, but the Court declines to consider this issue. *See Oberwager v. McKechnie Ltd.*, 351 F. App'x. 708, 711 (3d Cir. 2009) ("It is, of course, inappropriate to raise an argument for the first time in a Reply brief.").

10/22/21

_____
Hon. Madeline Cox Arleo, District Judge
United States District Court